UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JEREMIAH DOE,
   Plaintiff,

  -v-

ALAN SANDERSON II,
JORDAN RYAN,
JASON BOISVERT,
DANIEL CHURCH,
XAVIER ROLLE,
DAVID CITRO,
"JOHN" LABELLE,
BRUCE GILB,
DAYNA MORGAN,
LARRY TURNER,
PETER PEPE,
LUIS SPENCER,
   Defendants.

C.A. NO. _____

Honable Judge: _____

## Introduction

This ia a civil rights action filed by, JEREMIAH DOE, a state prisoner, for damages under 42 U.S.C. §1983, alleging excessive use of force, verbal harassment, and the failure to keep this Plaintiff safe in violation of the Eighth Amendment to the United States Consitution. The Plaintiff is also alleging the unlawful removal of statutory good time for an incident without a hearing or a guilty finding and for the excessive time in segregation without a hearing which is a violation of the Due Process Clause of the Fourteenth Amendment of the United States Consitution. The Plaintiff also is alleging the denial of the use of a telephone which is a violation of the First Amendment to the United States Consitution. The Plaintiff is also stating that the above incidents are also a violation of the Plaintiff's rights given to him by the Civil Rights Act of Massachusetts according to M.G.L. c.12 §§11H-I, and a violation of the Code of Massachusetts Regulation ("CMR"). THe PLaintiff also alleges the torts for assault and battery and Criminal Harassment.

## Jurisdiction

1. The Court has juridicition over the Plaintiff's claim of violation of federal rights under 28 U.S.C. §§ 1331 and 1343.

2.   The Court has supplemental jurisdication over the Plaintiff's
     state law tort claims under 28 U.S.C. § 1367.

<u>Parties</u>

3.   The Plaintiff, **JEREMIAH DOE** ,was incarcerated st Souza-
     Baranowski Correctional Center ("SBCC") during the events
     described in this complaint.

4.   Defendants **ALLEN SANDERSON II, JORDAN RYAN, JASON BOISVERT,
     DANIEL CHURCH, XAVIER ROLLE, DAVID CITRO, "JOHN" LABELLE,** are
     all employed by the Massachusetts Department of Corrections
     ("MDOC"), and at the time of the incidents described worked
     at "SBCC". They are all sued in their individual capacities.

5.   Defendant **BRUCE GILB** was the Superintendent in charge of
     "SBCC" at the time of the incident. He is sued in his
     individual capacity.

6.   Defendant **DAYNA MORGAN** and **LARRY TURNER** were case managers
     from the State of Colorado who were responsible for the
     Plaintiff's care and custody according to the Interstae
     Compact agreement, and are responsible to the addition and
     removal of good time. They are being sued in their individual
     and offical capacities.

7.   Defendant **PETER PEPE**, WAS THE Deputy Commissioner of the
     prison division for "MDOC". He is sued in his Individual
     capacity.

8.   Defendant **LUIS SPENCER**, WAS THE Commissioner for the "MDOC".
     He is sued in his individual capacity.

9.   All of the Defendants have acted, and continue to act, under
     the color of state law at all times relevant to this
     complaint.

## Facts

10. In March 2013, The Plaintiff, was convicted of approximately 120 charges of sexual explotation, sexual assault, and unlawful sexual contact.

11. The Plaintiff was convicted to a substantial amount of time to state prison, and was moved out of the Plaintiff's state to the state of Massachusetts as part of an Interstate Compact agreement, because of his safety at the Plaintiff's home state.

12. The Plaintiff was moved to general population at Massachusetts Correctional Insitution-Cedar Junction.

13. The Plaintiif was then classed and tranfered to "SBCC", against the Plaintiff's wishes.

## Souza-Baranowski Correctional Center

14. In July 2013, The Plaintiff was transported to "SBCC", in a "MDOC" transport van with other inmates.

15. Upon arrival at "SBCC" the Plaintiff met with two Correctional Officers (not defendants), who worked for Inner Peremeter Security ("IPS").

16. The Two "IPS" Officers had me come into a work office, which had a computer with an internet page of a Colorado news article about the Plintiff's charges and arrests.

17. The two "IPS" officers informed the Plaintiff that the Plintiff was not safe to go into general population.

18. The two "IPS" officers informed the Plaintiff that he was going to be placed in the insitutio Segergation Unit ("SMU").

## Verbal Harrasment at "SBCC"

19. On or about July 13th 2013, Defendant **Xavier Rolle** went to other inmates in the Plaintiff's "SMU" unit, about the Plaintiff's charges and that the Plaintiff was in prison for over 239 charges of child rape and that the Plaintiff was a cop.

20. When the Plaintiff was on the telephone, Defendant Rolle stated and continued to call the Plaintiff, "Sandusky". This occured numerous times and was loud enough for other inmates to hear Defendant Rolle, and caused other inmate to harass the Plaintiff.

21. Defendant Rolle called the Plaintiff "Sandusky" over 30 times in a three day period, even after the Plaintiff asked Defendant Rolle to stop.

22. On July 15, 2013, after about 3-5 days in "SMU", the Plaintiff was transfered to general population unit G-1.

23. The Plaintiff entered into G-1 and was "greeted" immedatly by about 5-10 inmates who were saying, "you used to be a cop?", "I'm a kid, do you want to touch me here?", and "skinner" (a derogatory slang for a **sex** offender).

24. The Plaintiff was not in the unit more then 10 minutes when this harassment started, and the Plaintiff did not talk to anybody prior to coming into the unit, or tell any inmate the Plaintiff's name.

25. The Plaintiff was informed by other inmate that Defendant **David Citro** informed inmates about 5-10 minutes prior to the Plaintiff entering the unit of the Plaintiff's charges and previous employment, reportedly telling inmate to "take care of him" (refering to the Plaintiff).

26. The Plaintiff attempted to use the telephone, when other
    inmates were also using the telephone, and Defendant Citro
    told the Plaintiff to get off the phone and to "go play with
    your new friends", pointing to the inmates who harassed the
    Plaintiff when the Plaintiff entered the unit.

27. Approximately a few hours later, when the Plaintiff was out
    of his cell in the common area, Defendant Citro stated to the
    Plaintiff, "hey fuckstick, you fucking skinner".

28. Defendant Citro called the Plaintiff "fuckstick" about 5-7
    more times throughout the night. The Plaintiff informed
    Defendant Citro to stop it, but Defendant Citro did not.

29. On July 25, 2013, a note was discovered wrapped in a shank
    that said, "tell the C.O. you want to leave, unless you want
    to take it the hard way, by the way, mine is bigger".

30. The Plaintiff reported incident to his Mental Health Case
    Worker, via a written note.

31. On July 26, 2013, "IPS" officers (not defendants), removed
    the Plaintiff from unit G-1 and placed the Plaintiff in "SMU"
    status in the Health Services Unit ("HSU") of the prison.

32. On July 29, 2013, The Plaintiff was transfered from "HSU" to
    "SMU" at approximately 1:30p, but was not given any bedding
    (blanket, sheets, matress and pillow).

33. At approximately 5:30p, Defendant **Jason Boisvert** was asked by
    the Plaintiff for bedding, at which time he told the Plaintiff
    "Not only no, but Fuck no".

34. From approximately 5:30p to 10:30p the Plaintiff asked
    Defendant Boisvert and Defendant **Daniel Church** over 10 times
    for bedding, at which the responses were "Fuck no".

35. At 10:30p, Defendant Boisvert removed the Plaintiff from his
    cell in hand-cuffs, and had him face a wall, while Defendant
    Church placed bedding materials in the Plaintiff's cell.

36. While the Plaintiff was outside of the cell, Defendant
    Boisvert said to the Plaintiff, "You used to be a cop? You're
    a fucking disgrace." The Plaintiff did not respond to the
    defendant's comment.

37. The Plaintiff was then placed back inside of his cell, and the
    door was closed and the hand-cuffs were removed.

38. The Plaintiff went to the matress and noticed that the
    matress was torn with the stuffing coming out, the sheets
    were dirty, torn, and unwashed for what looked like over two
    months of use from a different inmate, and the Plaintiff
    never recieved a pillow.

39. The Plaintiff noticed the Matress along with the sheets were
    wet from when Defendant Church poured several cups of water
    on them due to the floor being wet arround the area where the
    bedding was placed

40. The Plaintiff asked Defendants for new bedding, and was told
    "fuck you".

41. Throughout the night Defendant Boisvert woke the Plaintiff up
    several times telling the Plaintiff to, "make sure you hang
    it up tonight", which is refering to having the Plaintiff
    commit suicide. Defendant Boisvert said this to the Plaintiff
    about 3-7 time.

42. On July 30 2016, Defendant Boisvert was supervising an inmate
    janitor, when Defendant Boisvert siad to the inmate janitor,
    which was loud enough for the entire unit to hear, "the guy in
    cell #32 was a cop and is in here for child rape."

43. Defendant then wispered something to the inmate janitor, who
    then came over to the Plaintiff's door and yelled out to the
    entire unit "His name is [Plaintiff's Name]".

44. The Plaintiff looked out of his window and saw Defendant
    Boisvert laughing.

45. The Plaintiff also heard inmate start to use the Plaintiff's
    name and saying, "Skinner", "Fucking Cop, I'll kill you"' and
    "Hang it up, before we get you". This continued for about 5-10
    minutes with Defendant Boisvert observing everything and
    participating in it.

46. Between July 30 to August 20, 2016, Defendants Boisvert and
    Church continued to harass the Plaintiff by telling him to
    "hang it up" and "we will get you sooner or leter" numerous
    times in excrss of 10 times through this period of time.

47. The Plaintiff during this time refused to take showers, based
    on the correctional officers who were working, and had a serious
    relapse of his mental health condition causing him to
    contemplate suicide numerous times.

48. On or about August 22, 2016, Defendant **Jordan Ryan** was escorting
    the medication cart arround the unit.

49. When the medication cart same to the Plaintiff's door,
    Defendant Ryan told the nurse giving the medication to give
    the Plaintiff "Chilren's Tylenol" since the Plaintiff was a
    skinner.

50. The Plaintiff did not recieve the correct medication that night.

51. On August 23, 2016, an unknown correctional officer was heard
    by the Plaintiff telling the inmate in the next cell that the
    Plaintiff was a cop.

52. On August 26, 2016, Defendant Boisvert came to the Plaintiff's cell door, kicked the door, and said, "you want a shower, you dangerous creature." The Plaintiff refused a shower due to the fear of Defendant Boisvert's previos remarks about a possible assault.

53. On August 29, 2016, Defendant Rolle, banged on the Plaintiff's door and said, "hey coach, how was the banana?" This statement was ment to harass the Plaintiff.

54. On August 30, 2016, Defendant **Allan Sanderson** banged on the Plaintiff's cell door, opened the food tray slot, and said, "Sandusky, here is your tray".

55. Defendant Sanderson then asked the Plaintiff when picking up the food tray, " If I touch your tray am I going to get ringworm?", this statement was refering to the Plaintiff's criminal case.

56. On August 31, 2016, Defendant Sanderson banged on the Plaintiff's door and said, "Sandusky, get ready for a shower, you mother fucker." The Plaintiff did not feel safe and then refused a shower for that day.

57. Defendant Sanderson banged on the Plaintiff's door and said, "Skinned beef (another derogatory name for a sex offender) you want a book?"

58. Defendant Sanderson then continued to call the Plaintiff "Sandusky" about 20-25 times from August 31 - September 5, 2013.

59. The Plaintiff's mental health continued to relapse, and the Plaintiff contemplate suicide at a more consistant basis.

### Officer Assault on the Plaintiff

60. On September 5, 2016 at approximately 3:17p, Defendant Sanderson told the Plaintiff's new next door neighbor, "you know you have a ripper (another derogatory term for a sex offender) next door, he is a huge ripper, little boys".

61. At arround 4:00p, Defendant Sanderson kicked the Plaintiff's door and told the Plaintiff it was time for a shower.

62. The Plaintiff placed his hands through the opened food tray slot to be hand-cuffed so that he could leave his cell for a shower.

63. The Plaintiff's door opened and Defendant Sanderson said to the Plaintiff "Sandusky, what shower do you want?"

64. The Plaintiff chose a shower away from other cells.

65. Defendant Sanderson said, " Good choice at least they will have a harder time to piss on you," refering to other inmates who were close to the shower door.

66. When the shower door was locked, Defendant Sanderson removed the Plaintiff's hand-cuffs.

67. Defendant Sanderson then was seen talking to inmate(s) in a cell close to where the Plaintiff was taking a shower, and then opening what appeared to be the food tray slot.

68. Defendant Sanderson returned to the Plaintiff's shower stall approximately 30 minutes later.

69. Defendant Sanderson placed hand-cuffs on the Plaintiff fairly tight and then proceeded to open the shower door.

70. Defendant Sanderson then escorted the Plaintiff to his cell.

71. When Defendant Sanderson was escorting the Plaintiff, Defendant
    Sanderson stated, "You are serving life, right? Look at the
    color you are wearing, you are not wearing blue anymore." This
    was said loud enough for several other inmates to hear.

72. The Plaintiff did not answer Defendant Sanderson.

73. The Plaintiff went inot his cell and the door was closed.

74. The Plaintiff placed his hands through the food tray slot with
    enough room to remove the hand-cuffs.

75. Defendant Sanderson was in the processes of removing the
    hand-cuffs and twisted the handcuffs hard towards the Plaintiff's
    thumbs.

76. When Defendant Sanderson did this he said, "Sandusky, somebody's
    going to kill you in here."

77. The Plaintiff recieved injuries from what Defendant Sanderson
    did. The Plaintiff received bruises on both wrists about 2
    inches in diameter and numbness on the pointer finger, thumb,
    and web between the thumb abd pointer finger. This numbness
    lasted 6 months to a year.

78. Defendant Sanderson, then closed the food try slot door.

79. The Plaintiff did not feel safe anymore and did not take
    showers or leave his cell for recreation time until the
    Plaintiff left.

80. The Plaintiff upon looking in his cell, observed fruit in
    his toilet makeing the Plaintiff having to reach into the
    toilet with his bare hands to remove these items.

81. At 10:05p, a correctional officer removed an inmate from a cell and allowed that inmate to kick the Plaintiff door, waking the Plaintiff up.

82. At 10:20p, Defendant Sanderson kicked the Plaintiff's door, waking the Plaintiff up, and told the Plaintiff, "hang it up, Sandusky".

## Continued Harassment at "SBCC"

83. On September 15, 2013, Defendant Ryan while giving the Plaintiff his breakfest, Defendant Ryan threw part of the Plaintiff's breakfest on the cell floor.

84. Defendant Ryan then came arround with the medication nurse. Defendant Ryan stated to the nurse to give the Plaintiff "Children's Tylenol".

85. The medication nurse placed the Plaintiff's medication in a clear plastic cup on the food tray slot.

86. The Plaintiff retrieved the plastic cup and took the medication in the plastic cup.

87. The Plaintiff went to place the cup back on the food tray slot and while doing this Defendant Ryan closed the food tray slot on the Plaintiff's hands.

88. The Plaintiff received injuries on his knuckles and hands from this incident which included brusing and cuts and scrapes.

89. On September 15, 2013, The Plaintiff was signed up to use the phone, but Defendant Ryan refused to allow the Plaintiff to use the phone, even when the Plaintiff asked to use the phone.

90. On September 29, 2013, the Plaintiff was given his lunch meal from Defendant **"John" LaBelle**.

91. The Plaintiff retrieved his lunch tray and placed it on the Plaintiff's desk inside of his cell.

92. Defendant LaBelle then placed two styrofoam cups of juice on the food tray slot.

93. When the Plaintiff tried to grab the cups of juice, Defendant LaBelle attempted to spill the juice on the Plaintiff, by bumping the juice towards the Plaintiff.

94. The Plaintiff tried to stop the juice from being spilled on him, and to stop it from spilling on the Plintiff, and in doing so spilled the juice outside of the Plintiff's cell.

95. Defendant LaBelle closed the food tray slot without giving the Plaintiff any drinks required by meal policies.

96. Approximately three days after the incident the Plaintiff was informed that the Plaintiff committed no rule infractions.

97. On or about October 17, 2013, the Plaintiff received a letter from Defendant **Dayna Morgan** and **Larry Turner** that the Plaintiff would be losing 45 days of statutory good time for the above mentioned incident.

98. The Plaintiff wrote Defendant Morgan and Turner informing them that the Plaintiff never had a hearing and was never charged with a rules infraction, and the 45days of good time should not be taken from the Plaintiff.

99. Defendant Morgan and Turner did not respond to the Plaintiff's letter, and according to information retrieved from an attorney, good time was taken away from the Plaintiff without a hearing.

100. The Plaintiff sent a letter to both Defendant Morgan and
     Turner, along with numerous calls from the Plaintiff's
     family, about the continued abuse and harassment the
     Plaintiff was reciving on behalf of the Defendants.

101. The Plaintiff retained an attorney who sent letters to
     Defendants **Luis Spencer, Peter Pepe**, and **Bruce Gilb** about
     the continued abuse and harassment of the Plaintiff on
     08/16/13, 09/02/13, 09/07/13, 09/09/13/, 09/19/13 and
     10/05/13.

102. The Plaintiff never had any of the Defendants in ¶ 101
     attempt to stop the harassment and/or the physical assault
     from occuring.

103. On October 24, 2013, The Plaintiff was moved from "SBCC" to
     another insitution ran by "MDOC", and was then removed from
     "SMU" status after serving over 90 days in "SMU" without a
     hearing or any information about any reviews that were
     completed.

104. While at the other insitution, another inmate who was in the
     same unit as the Plaintiff at "SBCC" "SMU" came to the
     Plaintiff's  cell and distroyed about $100.00 to $200 worth
     of the Plaintiff's property, due to the knowledge obtained
     by the Defendanta at "SBCC".

### Administrative Remedies

105. The Plaintiff filed two grievances about the above incidents.

106. The Plaintiff attempted to appeal the grievances, but was
     informed that the Plaintiff was unable to appeal the
     grievances.

107. The Plaintiff finally heard the result of an internal
     investigation on the above events in Janurary 2016.

108. The Plaintiff has exhausted all of his administrative remedies.

## Claims for Relief

109. The actions of Defendants Sanderson and Ryan in using physical force against the Plaintiff, were done maliciously and sadistically causing extreme pain and injury to the Plaintiff and consituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Consitution.

110. The actions of Defendant Sanderson and Ryan in using physical force against the Plaintiff without need or provocation consituted the tort of assault and battery in the state of Massachusetts and is a violation of the Massachusetts Civil Rights Act according to M.G.L. c. 12 §§ 11H-I.

111. The actions of Defendants Boisvert, Rolle, Citro, Church, and LaBelle in verbal harassing the Plaintiff in conjunction with the assaults mentioned in ¶¶ 109-110, was done to cause the Plaintiff arm to both his mental and physical health. These were done maliciously and sadistically and consitutes cruel and unusual punishment and also a failure to protect the Plaintiff in violation of the Eighth Amendment of the United States Consitution.

112. The actions of Defendants Boisvert, Rolle, Citro, Church and LaBelle in the continuing verbal harassment consitutes a violation of M.G.L. c. 265 §43A, the "CMRs", and a tort of criminal harassment under the law of the state of Massachusetts and is a violation of the Massachusetts Civil Rights Act according to M.G.L. c. 12 §§ 11H-I.

113. The failure of Defendants Gilb, Spencer, and Pepe to take
     disciplinary or other actions to curb the known pattern of
     physical abuse of inmates by Defendants Sanderson and Ryan
     consitutes deliberate indifference to the Plaintiff's and
     other prisoner's safety and contributed to and proximately
     caused the above-described events whihc is a violation of
     the Eighth Amendment to the United States Consitution,
     assault and battery, and crimainl harassment.

114. The actions of Defendants Morgan and Turner for taking
     disciplinary action against the Plaintiff without a hearing
     or due process of the law in violation of the Fourteenth
     Amendment of the United States Consitution.

115. The actions of Defendants Gilb. Morgan, and Turner to remove
     the Plaintiff from segergation without a hearing denied the
     Plaintiff's due process of the law in violation of the
     Fourteenth Amendment to the United States Consistution.

116. The action of Defendant Ryan in refusing to allow the
     Plaintiff to use the telephone at the time the Plaintiff was
     scheduled to use the telephone is a violation of the first
     Amendment to the United States Consitution, and a violation
     of the "CMRs".

WHEREFORE, the Plaintiff requests that the court grants the
following relief:
A. Issue a declaratory judgement stating that:
  1. The physical and verbal abuse of the Plaintiff by
     Defendants Boisvert Rolle, Sanderson, Citro, Ryan, Church,
     and LaBelle violated the Plaintiff's rights under the
     Eighth Amendment to the United States Consitution and
     consituted criminal harassment and assault and battery
     under state law.

2. Defendant Gilb, Pepe, and Spencer's failure to take action
   to curb the physical and verbal abuse of prisoners, violated
   the Plaintiff's rights under the Eighth Amendment to the
   United States Consitution and consituted criminal harassment
   and assault and battery under state law.

3. Defendants Morgan and Turner's actions in taking statutory
   good time from the Plaintiff without any due process
   protections under the law, violated the Plaintiff's rights
   under the Due Process Clause of the Fourteenth Amendment
   to the United States Consitution.

4. Defendants Morgan, Turner, Gilb, Pepe, and Spencer's
   failure to take action in removing the Plaintiff from "SMU"
   status after being on "SMU" status for over 90 days without
   a hearing, violated the Plaintiff's rights under the Due
   Process Clause of the Fourteenth Amendment to the United
   States Consitution.

B. Award compersatory damages in the following amounts:

1. $100,000 jointly and severally against Defendants Boisvert,
   Rolle, Sanderson, Citro, Ryan , Church, and LaBelle for the
   physical and emotional injuries sustained as a result of
   the Plaintiff's verbal harassment and physical assault.

2. $10,000 jointly and severally against defendants Gilb,
   Pepe, and Spencer for their role in the physical and
   emotional injuries sustained as a result of the Plaintiff's
   verbal harassment, physical assault, and the violation of
   Due Process for the Plaintiff's time in "SMU".

3. $10,000 jointly and severally against Defendants Morgan
   and Turner for the punishment, including deprivation of
   liberty and amenity, and emotional and physical injury for
   thier role in the Plaintiff's verbal harassment and

physical assault, the Plaintiff's denail of due process for
the removal of good time and the violation of due process
for the Plaintiff's time in "SMU" without a hearing.

C. Award punitive damages in the following amounts:

1. $30,000 each against Defendants Sanderson and Ryan.

2. $20,000 each against Defendants Boisvert, Rolle, Citro
Church, and LaBelle.

3. $10,000 each against Defendants Gilb, Pepe, Spencer,
Morgan, and Turner.

D. Grant such other relief as it may appear that the Plaintiff
is entitled.

[Jeremiah Doe]
OCCC
1 Administation Rd.
Bridgewater, MA 02324
10/15/2016