UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JEREMIAH DOE,

    Plaintiff,

v.                                   Civil Action No. 16-12068-IT

ALAN SANDERSON, II, et al.,

    Defendants.

## MEMORANDUM AND ORDER

March 30, 2018

TALWANI, D.J.

*Pro se* Plaintiff Jeremiah Doe, who formerly was incarcerated at Souza-Baronowski Correctional Center ("SBCC"), a Massachusetts Department of Corrections ("DOC") facility, brings this action against various Defendants including Jason Boisvert, Daniel Church, David Citro, John Labelle, Jordan Ryan, Alan Sanderson, and Bruce Gelb (together, the "SBCC Defendants"), and Peter Pepe and Luis Spencer (together, the "DOC Defendants").[1] Plaintiff asserts federal and state law claims against all Defendants, arising from the verbal and physical abuse he allegedly suffered at the hands of Defendants Boisvert, Church, Citro, Labelle, Ryan, Sanderson, and Rolle, and from the DOC Defendants and Defendant Gelb's alleged failure to stop such abuse. All Defendants are sued in their individual capacity.

---

[1] Plaintiff also brought claims against Defendants Dayna Morgan, Larry Turner, and Xavier Rolle. Defendants Morgan and Turner were dismissed from this action because Plaintiff failed to state a claim upon which relief may be granted as to the alleged revocation of his good time credits without a hearing or notice. Order [#7]. At the time the pending motions to dismiss were filed, Plaintiff had not yet served Defendant Rolle. According to the returned executed summons, on November 14, 2017, DOC Legal Counsel accepted service on Rolle's behalf. DOC Counsel has not appeared on Rolle's behalf, however, and to date, Defendant Rolle has not responded to the Complaint.

Pending before this court is the SBCC Defendants' Motion to Dismiss Plaintiff's Complaint [#13] and the DOC Defendants' Motion to Dismiss Plaintiff's Complaint [#35]. Plaintiff filed a Brief in Opposition to [the SBCC] Defendants' Motion to Dismiss [#38] but did not respond separately to the DOC Defendants' motion. For the following reasons, the SBCC Defendants' Motion to Dismiss Plaintiff's Complaint [#13] is ALLOWED in part and DENIED in part, and the DOC Defendants' Motion to Dismiss Plaintiff's Complaint [#35] is ALLOWED.

I. Factual Background as Alleged in the Complaint

In March 2013, Plaintiff was convicted in Colorado of 120 charges of sexual exploitation, sexual assault, and unlawful sexual contact with children. Compl. ¶ 10 [#1]. In July 2013, Plaintiff was moved to Massachusetts and eventually transferred to SBCC, where he remained until October 24, 2013. Id. ¶¶ 11-14, 103. At all relevant times in the Complaint, Defendants Boisvert, Church, Citro, Labelle, Ryan, Rolle, and Sanderson were all corrections officers at SBCC. Id. ¶ 4. Defendant Gelb was the superintendent of SBCC. Id. ¶ 5. Defendant Spencer was the Commissioner of the Massachusetts DOC and Defendant Pepe was the Deputy Commissioner of the Massachusetts DOC Prison Division. Id. ¶¶ 7-8.

Plaintiff alleges that upon arrival at SBCC, he was placed into the Segregation Unit. Id. ¶ 18. He alleges that on or about July 13, 2013, Defendant Rolle told other inmates within the unit that Plaintiff was in prison for over 239 charges of child rape and that Plaintiff had been a cop. Id. ¶ 19. Plaintiff alleges further that Defendant Rolle called Plaintiff a derogatory term for child molester more than 30 times over a three-day period. Id. ¶¶ 20-21. Approximately two days later, Plaintiff was moved to the general population unit. Id. ¶ 22. Prior to his transfer, Defendant Citro allegedly told other inmates within the general population unit about Plaintiff's crimes and former occupation and instructed one inmate to "take care of [Plaintiff]." Id. ¶¶ 23-25. Later,

2

when Plaintiff attempted to use the phone, Defendant Citro allegedly told Plaintiff to get off of the phone and play with "his new friends," referring to the inmates to whom Defendant Citro had disclosed Plaintiff's former occupation and crimes to. Id. ¶ 26. Plaintiff alleges that at some point between July 15, 2013, and July 25, 2013, Defendant Citro used additional offensive language and also called Plaintiff a derogatory term for child molester 5 to 7 times. Id. ¶¶ 27-28.

On July 29, 2013, Plaintiff was transferred back to the Segregation Unit. Id. ¶ 32. Plaintiff alleges that upon his return, Defendants Boisvert and Church initially denied him bedding, id. ¶¶ 32–34, and Defendant Boisvert told him multiple times to "hang it up," which is a reference to suicide. Id. ¶ 41. Plaintiff alleges that on July 30, 2013, Defendant Boisvert told another inmate that Plaintiff "was a cop and is in here for child rape," subjecting Plaintiff to verbal abuse from that inmate. Id. ¶¶ 42-45.[2] These taunts allegedly occurred for 5-10 minutes, with Defendant Boisvert participating. Id. ¶ 45.

From July 30, 2013 to August 20, 2013, Defendants Boisvert and Church allegedly continued to make comments such as "hang it up" or "we will get you sooner or later" more than 10 times. Id. ¶ 46. On August 22 and September 15, 2013, Defendant Ryan gave Plaintiff Children's Tylenol instead of his proper medication, allegedly to taunt him, and denied him his proper medication. Id. ¶¶ 48-49, 83-84. Plaintiff further alleges that from the end of August through September 5, 2013, Defendants Rolle and Sanderson taunted Plaintiff on multiple occasions, using various slurs for child molester. Id. ¶¶ 53–59.

---

[2] The allegations concerning the July 30 to August 31 incidents at SBCC in Paragraphs 42 through 56 of the Complaint give the year as 2016 rather than 2013. The SBCC Defendants suggest that these references are typographical errors. SBCC Mem. at 3, n.3. Given the Complaint's further allegation that Plaintiff was moved from SBCC in October 2013, the absence of any disagreement in Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss [#38] that the 2016 date was a typographical error, and the Plaintiff's own description that the incidents occurred in 2013, see Pl. Opp. at 4, the court finds that the 2016 dates in the Complaint are typographical errors.

Plaintiff alleges that on September 5, 2013, Defendant Sanderson notified the inmate next to Plaintiff's cell that Plaintiff was a "ripper," another derogatory term for a child molester, and as he removed Plaintiff's handcuffs, Sanderson allegedly "twisted them hard" towards Plaintiff's thumbs and told Plaintiff that someone would kill him in prison. Id. ¶¶ 60, 72–76. Plaintiff alleges that he received bruises on both wrists and numbness in his fingers that lasted between six months and a year as a result. Id. ¶ 77. Plaintiff also alleges that Defendant Sanderson told him to "hang it up." Id. ¶ 82. On September 15, 2013, Defendant Ryan allegedly closed a food tray slot on Plaintiff's hands, which caused bruising and cuts on his knuckles and hands. Id. ¶¶ 87–88. That same day, Defendant Ryan allegedly did not allow Plaintiff to use the phone. Id. ¶ 89. Plaintiff alleges that on September 29, 2013, while giving Plaintiff his lunch, Defendant Labelle tried to spill juice on Plaintiff and then refused to give Plaintiff anything to drink. Id. ¶¶ 90–95.

Plaintiff alleges that on August 16, September 2, 7, 9, 19, and October 5, 2013, Plaintiff's attorney sent letters to Defendants Spencer, Pepe, and Gelb, notifying them of the above incidents. Id. ¶ 101. Plaintiff alleges that they never attempted to "stop the harassment and/or physical assault from occurring." Id. ¶ 102. On October 24, 2013, Plaintiff was transferred to another prison. Id. ¶ 103.

II.  Standard of Review

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss a complaint for failure to state a claim upon which relief can be granted is properly allowed when the complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)). Considering the complaint in the light

most favorable to the plaintiff, see Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017), the court will "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mtn. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)).

III.  Discussion

Plaintiff alleges multiple federal and state claims, including: (1) a violation of Eighth Amendment against Defendants Boisvert, Citro, Church, and LaBelle for continuing verbal harassment; (2) a violation of the Eighth Amendment against Defendants Sanderson and Ryan for alleged use of physical force against Plaintiff; (3) a violation of the Eighth Amendment against the DOC Defendants and Defendant Gelb for deliberate indifference; (4) a violation of Due Process Clause against Defendant Gelb for failure to provide Plaintiff a hearing prior to moving him to the segregation unit; (5) a violation of the First Amendment against Defendant Ryan for refusing to allow Plaintiff to use the telephone; (6) a violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H-I, against Defendants Ryan, Sanderson, Boisvert, Rolle, Citro, Church, and LaBelle for alleged physical abuse and verbal harassment; (7) assault and battery against Defendants Ryan and Sanderson for alleged use of physical force; (8) a violation of M.G.L. c. 265, § 43A against Defendants Boisvert, Rolle, Citro, Church, and LaBelle for the continuing verbal harassment; and (9) the tort of criminal harassment against Defendants Boisvert, Rolle, Citro, Church, and LaBelle for the continuing verbal harassment.

A.  *Plaintiff's Claims Survive Dismissal Based on the Statute of Limitations*

Defendants argue that all of Plaintiff's federal claims are barred by the statute of limitations. SBCC Mem. at 8-9; DOC Mem. at 7-8. A statute of limitations defense can prevail at the dismissal stage, provided that the facts supporting the defense are "clear on the face of

5

plaintiff's pleading." Trans-Speck Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008). If the complaint shows the limitations period has been exceeded and "fails to sketch a factual predicate that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate." Id.

Here, the proper cause of action for Plaintiff's First, Eighth, and Fourteenth Amendment claims is a 42 U.S.C. § 1983 claim. See Gomez v. Toledo, 446 U.S. 635, 638 (1980) (§ 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secure by the Constitutional and laws by any person acting under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory"). Claims brought under 42 U.S.C. § 1983 do not have their own statute of limitations and are governed by the forum state's limitation period for personal injury causes of action. Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001). In Massachusetts, the limitation period is three years and "runs from each civil rights violation identified in the complaint." Id. (quoting Hernandez Jimenez v. Calero Toledo, 576 F.2d 402, 404 (1st Cir. 1978)). The cause of action begins to accrue when the "plaintiff knows, or has reason to know, of the injury that is the basis of the claim." Id. (quoting Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 (1st Cir. 1995)). According to the Complaint, the last incidents of alleged abuse (including any abuse that may have occurred after Plaintiff sent letters to Defendant Gelb and the DOC Defendants) occurred on September 29, 2013.[3] Id. at ¶¶ 91–95. Plaintiff's Complaint was not filed, however, until October 20, 2016.

Plaintiff argues that because he is incarcerated, the court should look to the date the Complaint was mailed, rather than the date it was filed. Pl. Opp. at 4. The First Circuit has

---

[3] Although Plaintiff claims in his Brief in Opposition to Defendants' Motion to Dismiss [#38] that he suffered additional verbal harassment from October 17 to October 24, 2013, there are no allegations for those dates in the Complaint. In any event, as discussed below, verbal harassment alone would not be sufficient for an Eighth Amendment violation. See infra, at 8-9.

6

explained that "the mailbox rule shall govern the determination of when a prisoner's § 1983 filing has been completed." Casanova v. Dubois, 304 F.3d 75, 79 (1st Cir. 2002). Under this rule, "[s]o long as the prisoner complies with the prison's procedures for sending legal mail, the filing date for purposes of assessing compliance with the statute of limitations will be the date on which the prisoner commits the mail to the custody of prison authorities." Id. Here, although Plaintiff has not provided an affidavit or notarized statement specifying the date the mail was deposited in the prison system, Defendants do not appear to dispute Plaintiff's contention that the Complaint was mailed on October 15, 2016, the date he signed the Complaint. Even using that date, however, the Complaint was filed more than three years after the abuse allegedly occurred.

Plaintiff further argues that he is entitled to equitable tolling for the time spent exhausting his administrative remedies. Pl. Opp. at 4. Specifically, he alleges in his Complaint that he filed a grievance on or about October 2014 and did not receive a final result until January 2016. Id.; Compl. ¶ 107. Equitable tolling is granted in "exceptional circumstances," Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 71 (1st Cir. 2005), and generally applicable where "circumstances beyond the plaintiff's control precluded timely filing." Monrouzeau v. Asociación Del Hosp. Del Maestro, Inc., 153 Fed. Appx. 7, 8 n.1 (1st Cir. 2005) (per curiam).

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners are required to exhaust all available administrative remedies prior to bringing suit. 42 U.S.C. § 1997(e)(a); Booth v. Churner, 532 U.S. 731, 739-741(2001); Silvestri v. Smith, et. al., No. 14-13137-FDS, 2015 WL 1781761, at *7 (D. Mass. Apr. 17, 2015). The rule applies to all levels of the prison grievance process, including optional appeals. Silvestri, 2015 WL 1781761, at *7. Although this circuit has yet to rule on this issue, multiple circuits have held that a prisoner is entitled to equitable tolling during this administrative period. See, e.g. Gonzalez v. Hasty, 651 F.3d 318, 323-324 (2d Cir.

2011); Brown v. Valoff, 422 F.3d 926, 942-943 (9th Cir. 2005); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2011); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000); Harris v. Hegmann, 198 F.3d 153 158 (5th Cir. 1999). "The purpose of that tolling doctrine is to avoid putting prisoners in a 'catch-22' wherein the 'prisoner who files suit . . . prior to exhausting administrative remedies [would] risk[] dismissal based upon § 1997(e); whereas the prisoner who waits to exhaust his administrative remedies [would] risk[] dismissal based upon timeliness.'" Silvestri, 2015 WL 1781761, at *7 (quoting Johnson, 272 F.3d at 522).

Because the last incidents of alleged abuse occurred on September 29, 2013, and Plaintiff mailed his Complaint on October 15, 2016, without equitable tolling, Plaintiff would be sixteen days over the three-year statute of limitations. With equitable tolling, excluding the time period between October 2014 to January 2016, Plaintiff's Complaint would be well within the three-year statute of limitations period. Accordingly, the court denies the motion to dismiss on statute of limitations grounds.

B.     *Plaintiff's 42 U.S.C. § 1983 Claims Arising From Alleged Verbal Harassment*

Plaintiff asserts an Eighth Amendment violation for the repeated verbal abuse he allegedly suffered by Defendants Boisvert, Rolle, Citro, Church, and LaBelle. Under the Eighth Amendment, prison officials "have a duty to provide humane conditions of confinement . . . and must take reasonable measures to guarantee the safety of prison inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). To state a claim under the Eighth Amendment, Plaintiff must demonstrate that he was subjected to "unnecessary and wanton infliction of pain . . . [which] constitutes cruel and unusual punishment . . . ." Hudson v. McMillian, 503 U.S. 1, 5 (1992). Verbal harassment such as "threats, discourtesies, [and] epithets" does not amount to a viable Eighth Amendment claim, which

8

requires sufficiently "extreme deprivations." Skinner v. Cunningham, 430 F.3d 483, 489 (1st Cir. 2005); see, e.g., Shabazz v. Cole, 69 F. Supp. 2d 177, 199 (D. Mass. 1999) (prison employee's use of racial epithets directed at prisoner did not rise to the level of an Eighth Amendment violation); Duran v. Duval, et. al., No. 96-10482-GAO, 1998 WL 765726, at *3 (D. Mass. Oct. 28, 1998) ("It is settled that emotional damage by verbal harassment does not amount to an infringement of a constitutional right, and thus is not actionable under Section 1983.").

Here, Plaintiff's claim against Defendant LaBelle must be dismissed because Plaintiff does not assert any actionable conduct by the defendant. Their only interaction occurred on September 29, 2013, in which Defendant LaBelle attempted to spill juice on Plaintiff. Compl. ¶¶ 90-95. Plaintiff's claims against Defendants Boisvert, Rolle, Citro, and Church also do not allege any physical injury, only verbal harassment. See id. ¶¶ 19-21, 23-28, 41-46, 53-59. Accordingly, the claims do not rise to the level of an Eighth Amendment violation and Plaintiff's claim must be dismissed.

C.     *Plaintiff's 42 U.S.C. § 1983 Claims Arising From Alleged Physical Harassment*

Plaintiff asserts an Eighth Amendment violation against Defendant Ryan for allegedly closing the food tray slot on Plaintiff's hands and against Defendant Sanderson for allegedly twisting Plaintiff's handcuffs as he was restrained. Id. ¶109. Although Plaintiff does not state a plausible Eighth Amendment violation against Defendant Ryan, Plaintiff does state a viable claim against Defendant Sanderson.

The salient question in claims alleging excessive force under the Eighth Amendment is "'whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Hudson, 503 U.S. at 6

9

(quoting Whitney v. Albers, 475 U.S. 312, 320-321 (1986)) (internal quotations and citations omitted). To determine whether the force was "wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Whitney, 472 U.S. at 321). "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry but does not end it." Id.

Plaintiff has not pled sufficient facts to support a finding that Defendant Ryan acted with malicious intent. Even construing the facts in the light most favorable to Plaintiff, the facts alleged equally support a finding that Defendant Ryan's conduct was accidental. Plaintiff does not assert that Defendant Ryan used any additional level of force than what is appropriate to close a food tray slot nor does he allege that Defendant Ryan threatened his safety in any manner. Although Plaintiff alleges that he suffered bruises and scrapes on his knuckles resulting from the closing of the food tray slot, Defendant Ryan's actions are not more than *de minimis*. See Hudson, 503 U.S. at 9-10 (Eighth Amendment "necessarily excludes from constitutional recognition *de minimis* uses of physical force . . . [not] every malevolent touch by a prison guard gives rise to a federal cause of action.").

In contrast, Plaintiff alleges a pattern of verbal abuse by Defendant Sanderson that culminated in a September 5, 2013, incident in which Defendant Sanderson taunted Plaintiff as he escorted him to and from the showers, twisted Plaintiff's handcuffs towards Plaintiff's thumbs, and threatened Plaintiff by informing him that someone in the prison would kill him. Id. ¶¶ 60-76. The twisting of the handcuffs allegedly occurred while Plaintiff was in his cell with his hands in the tray food slot, posing no threat or danger to Defendant Sanderson. Id. Plaintiff

10

allegedly suffered numbness in his fingers for a period of six months to a year as a result of this incident. Id. ¶ 77. This court finds that the alleged twisting of the handcuffs while Plaintiff was in a vulnerable position, without any protest or resistance from Plaintiff, and the alleged verbal threat to Plaintiff's safety rise to the level of a malicious act. These allegations, in the light most favorable to Plaintiff, are sufficient to state a claim for an Eighth Amendment violation. See also Nascarella v. Cousins, et. al., No. 13-cv-10878-IT, 2015 WL 1431054, at *5 (D. Mass. Mar. 27, 2015) (punching and kicking of inmate is an Eighth Amendment violation where inmate asked to speak to corrections officer's supervisor and inmate did not resist); Carter v. Symmes, et. al., No. 06-10273-PBS, 2008 WL 341640, at *5 (D. Mass. Feb. 4, 2008) (correction officers' motion for summary judgment denied where corrections officers allegedly shoved and restrained injured inmate for three hours).

### D. Plaintiff's 42 U.S.C. § 1983 Claim Arising From Failure to Use Phone

Plaintiff alleges that on September 15, 2013, Defendant Ryan refused to allow Plaintiff to use a phone. "Prisoners have no per se constitutional right to use a telephone." United States v. Footman, 215 F.3d 145, 155 (1st Cir. 2000); see also Roy v. Stanley, et. al., No. 03-2431, 2004 WL 2240051, at *1 (1st Cir. 2004) (denying prisoner's argument that corrections officers refusing to allow him to use the telephone is a First Amendment violation). Thus, Plaintiff's claim that Defendant Ryan violated his First Amendment rights by denying him telephone privileges is dismissed.

### E. Plaintiff's 42 U.S.C. § 1983 Claim Arising From Supervisors' Deliberate Indifference

Plaintiff brings a claim against the DOC Defendants and Defendant Gelb for their supposed deliberate indifference to his safety. Compl. ¶ 113. Plaintiff alleges that he sent letters to the DOC Defendants and Defendant Gelb on six separate dates and the three defendants never

stopped the verbal harassment or physical abuse by the corrections officers. Id. ¶ 101.

Under 42 U.S.C. § 1983, supervisory liability may not be predicated only on the theory of respondent superior; a supervisor is deemed liable "only on the basis of his own acts or omissions." Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-02 (1st Cir. 1994); see also Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). Mere negligence by a supervisor is not sufficient to create liability. Febus-Rodriguez, 14 F.3d at 92. The First Circuit has held:

> Absent participation in the challenged conduct, a supervisor "can be held liable . . . [only] if (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was 'affirmative[ly] link[ed]' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence [of the supervisor] amounting to deliberate indifference.'"

Hegarty v. Somerset Cty., 53 F.3d 1367, 1379-1380 (1st Cir. 1995) (citing Lipsett v. University of Puerto Rico, 864 F.2d 881, 902-903 (1st Cir. 1988) (citations omitted)). To satisfy the two prong test, Plaintiff must first establish that the conduct of the corrections officers amounted to a constitutional violation. The verbal harassment Plaintiff allegedly suffered does not rise to the level of a constitutional violation. See supra at pp. 8-9. Nor do the actions of Defendant Ryan. See supra at p. 10. However, because Defendant Sanderson's actions do plausibly rise to the level of an Eighth Amendment violation, see supra at pp. 10-11, this court proceeds with prong two.

"The 'affirmative link' requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Hegarty, 53 F.3d at 1380. Prong two can be satisfied if the supervisor "knew of, overtly or tacitly approved of, or purposely disregarded the conduct . . . isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom." Maldonado-Denis, 23 F.3d 582. Here, even construing the

allegations in the light most favorable to Plaintiff, Plaintiff has not alleged that the DOC Defendants and Defendant Gelb overtly or tacitly approved of or disregarded Defendant Sanderson's conduct. The isolated incident on September 5, 2013, alone does not give rise to an inference of a policy or custom that the DOC Defendants and Defendant Gelb knew of, approved of, or ignored Defendant Sanderson's alleged conduct. Accordingly, Plaintiff's claim against these three Defendants must be dismissed.

> F. *Plaintiff's 42 U.S.C. § 1983 Claim Arising From His Removal From Segregation Without a Hearing*

Plaintiff also asserts a Due Process violation against Defendant Gelb concerning time in the segregation unit without a hearing. Plaintiff alleges in his Complaint that on October 24, 2013, he was removed from segregation status without a hearing. Compl. ¶ 115. Plaintiff does not allege facts connecting Defendant Gelb to his removal from segregation status but imputes the action to Defendant Gelb in his claim. Because Plaintiff does not assert any factual allegations against Defendant Gelb in connection to this claim, the claim is dismissed.[4]

> G. *Plaintiff's State Civil Rights Claim Against the SBCC Defendants*

The SBCC Defendants argue that Plaintiff's state law claims should be dismissed because "[t]hese claims do not create a federal civil rights cause of action and cannot be decided consistently with the Eleventh Amendment, and even if they did, the Court should decline to exercise pendent jurisdiction to consider them." SBCC Mem. at 6.

"[T]he Eleventh Amendment bars a damages action against a State in federal court."

---

[4] Moreover, the pleadings are entirely unclear as to the exact nature of Plaintiff's claim. In his Complaint, Plaintiff attributes his removal from segregation without a hearing to Defendant Gelb. Compl. ¶ 115. However, Plaintiff also states that the removal from "SMU" status did not occur at SBCC, where Defendant Gelb is the superintendent, but after 90 days at another DOC institution. Id. ¶ 103. In his Brief in Opposition to Defendants' Motion to Dismiss [#38], Plaintiff states that his claim is for the 90 plus days he was held within segregation without a hearing.

Kentucky v. Graham, 473 U.S. 159, 169 (1985) (emphasis added). "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Id. at 166 (quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 n. 55 (1978)). In contrast, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Id. at 165. Plaintiff's state law claims brought against Defendants in their personal capacity are not barred by the Eleventh Amendment.

As the SBCC Defendants' Motion to Dismiss Plaintiff's Complaint [#13] does not dive into the merits of the state law claims, this court will not address the state law claims in this order but will retain jurisdiction. See Roche v. John Hanock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996) ("A federal court exercising jurisdiction over an asserted federal-question claim must also exercise supplemental jurisdiction over asserted state-law claims that arise from the same nucleus of operative facts.") (citing 28 U.S.C. § 1367(a)("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.")).

IV. Conclusion

For the foregoing reasons, the SBCC Defendants' Motion to Dismiss Plaintiff's Complaint [#13] is ALLOWED as to federal claims against Defendants Jason Boisvert, Daniel Church, David Citro, John Labelle, Jordan Ryan, and Bruce Gelb and otherwise DENIED and the DOC Defendants' Motion to Dismiss Plaintiff's Complaint [#35] is ALLOWED.

IT IS SO ORDERED.

Date: March 30, 2018 /s/ Indira Talwani
United States District Judge